**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| GREE, INC., | § | The Honorable Rodney Gilstrap |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 2:19-cv-00172-JRG-RSP |
| v. | § | |
| | § | |
| SUPERCELL OY, | § | |
| | § | JURY TRIAL DEMANDED |
| Defendant. | § | |
| | § | |

**DEFENDANT SUPERCELL OY'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ........................................................................................ 1

II.    APPLICABLE LAW GOVERNING CLAIM CONSTRUCTION.................... 1

III.   OVERVIEW OF THE ASSERTED PATENT .................................................. 2

IV.    DISPUTED CLAIM TERMS AND PHRASES FOR THE '302 PATENT ...................... 5

       A.    "shooting effective range" ........................................................ 5

       B.    "[first/second] touch operation"................................................ 7

       C.    "[cause/control] the display to display a frame indicative
             of a shooting effective range in accordance with a first
             touch operation on the touch panel" .................................... 11

       D.    "identify a second touch operation at the touch panel
             as an instruction for an attack when the frame is displayed"............... 12

       E.    "second touch operation in the frame"................................. 13

       F.    "first frame" ........................................................................... 15

       G.    "a slide operation".................................................................. 16

V.     CONCLUSION........................................................................................ 17

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

TABLE OF AUTHORITIES

Page(s)

CASES

*Apple, Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed. Cir. 2016)..................................................................................11

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*,
   224 F.3d 1308 (Fed. Cir. 2000)....................................................................................8

*Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*,
   815 F.3d 1314 (Fed. Cir. 2016), *cert. denied*, 137 S. Ct. 640 (2017) .......................1

*GPNE Corp. v. Apple Inc.*,
   830 F.3d 1365 (Fed. Cir. 2016)..........................................................................2, 10, 11

*GREE, Inc. v. Supercell Oy*,
   Case No. 2:19-cv-00070, Dkt. No. 115 ...................................................................6, 15

*Novo Indus. v. Micro Molds Corp.*,
   350 F.3d 1348 (Fed. Cir. 2003).................................................................................15

*Nystrom v. TREX Co.*,
   424 F.3d 1136 (Fed. Cir. 2005).................................................................................8

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008)........................................................................1, 5, 7, 15

*Personalized Media Commc'ns, LLC v. TCL Corp.*,
   No. 2:17-CV-433-JRG, 2018 WL 3207436
   (E.D. Tex. June 29, 2018) (J. Gilstrap) ....................................................................11

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc).................................................................1, 2

*Poly-Am., L.P. v. API Indus., Inc.*,
   839 F.3d 1131 (Fed. Cir. 2016)..........................................................................2, 10, 12

*Smartflash LLC v. Apple Inc.*,
   77 F. Supp. 3d 535 (E.D. Tex. 2014) .......................................................................16

*Sol IP, LLC v. AT&T Mobility LLC*,
   No. 218CV00526RWSRSP, 2019 WL 6879403 (E.D. Tex. Dec. 17, 2019) ..........8

*Sol IP, LLC v. AT&T Mobility LLC*,
   No. 218CV00526RWSRSP, 2020 WL 60141 (E.D. Tex. Jan. 6, 2020)..........15, 16

*Summit 6 LLC v. HTC Corp.*,
   No. 7:14-CV-00014-O, 2015 WL 11117868 (N.D. Tex. Mar. 21, 2015)...............16

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*Techtronic Indus. Co. v. Int'l Trade Comm'n*,
    944 F.3d 901 (Fed. Cir. 2019)..........................................................................2, 10, 11

*U.S. Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997)...............................................................................13

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## I.      INTRODUCTION

The parties fundamentally dispute the scope of a number of claim terms from the '302 patent.  It is the Court's duty to resolve those disputes.  *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1318 (Fed. Cir. 2016), *cert. denied*, 137 S. Ct. 640 (2017).  For all but one term, GREE argues that no construction is necessary, but its own opening brief highlights that GREE's understanding of the "plain and ordinary meaning" is impermissibly broad.  Moreover, GREE's constructions disregard, and even contradict, the intrinsic record.  Courts cannot assess ordinary meaning "in a vacuum"; they must do so "in the context of the written description and the prosecution history."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313, 1315 (Fed. Cir. 2005) (en banc).  The intrinsic record here contains no support for the scope GREE seeks to give the claims.  For these reasons and those provided below, the Court should adopt Supercell's proposed claim constructions.

## II.     APPLICABLE LAW GOVERNING CLAIM CONSTRUCTION

"The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed."  *Eon Corp.*, 815 F.3d at 1318 (citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008)).  "When the parties raise an actual dispute regarding the proper scope of these claims, the [C]ourt, not the jury, must resolve that dispute."  *Id.*  Disputed terms should be construed by their "ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention."  *Id.* (citing *Phillips*, 415 F.3d at 1312–13).  In some cases, claim construction will involve simply "application of the widely accepted meaning of commonly understood words."  *O2 Micro*, 521 F.3d at 1360.  A claim must always be construed consistently with the patent specification.  *See Phillips*, 415 F.3d at 1315 (citation omitted).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

The specification may also dictate a narrow meaning of a term that otherwise would be susceptible to a broader reading. *See Phillips*, 415 F.3d at 1316. "[W]hen a patent 'repeatedly and consistently' characterizes a claim term in a particular way, it is proper to construe the claim term in accordance with that characterization." *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1371 (Fed. Cir. 2016). "It is axiomatic that, where the specification 'describes 'the present invention' as having [a] feature,' that representation may disavow contrary embodiments." *Techtronic Indus. Co. v. Int'l Trade Comm'n*, 944 F.3d 901, 907–08 (Fed. Cir. 2019) (citing *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016)).

## III.   OVERVIEW OF THE ASSERTED PATENT

The '302 patent is titled "Shooting Game Control Method and Game System." Declaration of Jessica M. Kaempf in support of opposition to GREE's Opening Claims Construction Brief ("Kaempf Decl."), Ex. A (the "'302 patent") at Cover. The patent claims priority to a foreign application filed on February 26, 2013, and issued on May 14, 2019. *Id.* It is a continuation of U.S. Patent No. 9,795,873 (the "'873 patent), which is asserted by GREE in Civil Action No. 2:19-cv-00070 in this Court. The specifications of the '873 patent and '302 patent are substantively identical.

The '302 patent, like the '873 patent, is generally directed to managing and controlling a game. Specifically, the game is a shooting game played on a touch panel device, where aiming and shooting at a target is executed by a user's touch operations. *See* '302 patent at 2:18-31. In the claimed system and method, as in the '873 patent, a first touch operation allows a user to aim at a target, and a second touch operation allows a user to shoot at a target. *See id.*

2

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Figure 2, shown to the right, illustrates the process of the aiming and shooting.  *Id.* at 4:10-14.  The process is executed by a conventional CPU, for example, on a smartphone.  *See id.* at 3:3-4.  The crux of the process is shown in the top third of the flow chart, between S101 and S106.  As described in the specification, the process begins by the CPU determining that a user has executed a "touch" on the touch panel screen (S101).  *See id.* at 4:15-24.  The CPU then determines whether a target exists within a certain range from the touch-operated position (S103), and



FIG. 2

if so, "display[s] a shooting button circle SC centering at the touch-operated position" (S104), as shown in Figure 3 to the right.  *Id.* at 4:19-37.  The patent discloses that "[a]s illustrated in FIG. 3, the shooting button circle SC simulates an image of an optical sight (scope) centering at cross hair CH having a cross shape, which is disposed at the touch position."  *See id.* at 4:40-43.  The CPU then determines whether the user has executed a second "touch" within the shooting button circle SC (S105), and if so, executes shooting at the attack target (S106).  *Id.* at 4:53-61.



FIG. 3

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Alternatively, if there is no target at the first touch position, then the CPU will display a shooting button circle SC, as well as a separate circle, called a target circle TC, (S107).  *Id.* at Fig. 2.  The CPU determines whether "the outer edge of the shooting button circle SC has been touch operated," and if so, it "accepts a subsequent slide operation of moving the touch operation while the touch state on the touch panel unit 18 is being kept" (S108).  *Id.* at Fig. 2, 5:47-54.  The target circle TC reflects a range for shooting when shooting is executed "by an auto-aiming function" (S116).  *Id.* at 5:21-24.  In sum, the purported invention provides a method for aiming and shooting at a target based on two touches, the first of which displays a frame and the second of which fires at the target.  The purported invention also provides a means of adjusting the aim on a target by sliding the user's touch.



F I G. 4

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

[REDACTED]

## IV.   DISPUTED CLAIM TERMS AND PHRASES FOR THE '302 PATENT

### A.   "shooting effective range" (claims 1, 5, 8-11, 15)

| Supercell's Proposed Construction | GREE's Proposed Construction |
|---|---|
| Plain and Ordinary Meaning; No Construction Needed<br><br>In the alternative:  "a range within which shooting action may be effective" | "a range at which shooting action is effective" |

The phrase "shooting effective range" does not require construction, as the ordinary meaning is readily apparent and construction of the phrase would involve little more than application of widely accepted meanings of commonly understood words. *See O2 Micro Int'l*, 521 F.3d at 1360.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

GREE's proposal should not be adopted.  As an initial matter, while GREE's proposal appears to merely rearrange the order of the words (i.e., move "range [at which]" to the beginning of phrase) and add the word "action" after "shooting," GREE clarifies in its opening brief that it intends for the construction to be impermissibly limiting.  GREE contends that its proposal would clarify "that when a shooting action occurs while a target is in a 'shooting effective range,' then that shooting action ***will be*** effective, i.e., it ***can hit*** the desired target." GREE's Opening Brief ("Op. Br.") at 5 (emphasis added[1]).

GREE's construction is inconsistent with the intrinsic record.  First, GREE relies on the assumption that the "frame indicative of a shooting effective range" is necessarily limited to the "target circle TC."  But GREE itself has taken a contrary position.  Specifically, in the related case involving the '873 patent, GREE explained that "the ***shooting button circle*** show[s] a ***shooting effective range***."  *GREE, Inc. v. Supercell Oy*, Case No. 2:19-cv-00070, Dkt. No. 115 (Op. Claim Construction Br.) at 25.  The shooting circle that GREE points to is not limited, as GREE proposes, to a range in which a projectile can definitively hit a target.  Rather, the specification describes the shooting button circle SC as simply "simulat[ing] an image of an optical sight (scope)."  *See* '302 patent at 4:42-42, 5:15-17.  Further, the dependent claims specifically contemplate that not all targets within a frame will definitively be hit.  *See, e.g.*, '302 patent at claim 7 ("attack on an attack target among a plurality of attack targets within the frame").

Because the language "shooting effective range" is clear on its face, and because GREE's proposal seeks to narrow the term in a manner that is inconsistent with the specification, the Court should reject GREE's construction.  To the extent the Court finds construction is needed, Supercell proposes that the Court construe the "shooting effective range" as "a range within

---

[1] Emphasis shown in quoted material is added, unless stated otherwise herein.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

which shooting may be effective."  Such a construction is consistent with the disclosures discussed above.

**B.** **"[first/second] touch operation" (claims 1, 3, 5-11, 13, 15-17)**

| Supercell's Proposed Construction | GREE's Proposed Construction |
|---|---|
| "[first/second] operation that brings the user's finger or other object, such as a stylus, into contact with touch panel" | Plain and Ordinary Meaning; No Construction Needed |

"When the parties raise an actual dispute regarding the proper scope of these claims, the [C]ourt, not the jury, must resolve that dispute." *O2 Micro Int'l*, 521 F.3d at 1360.  Here, the parties clearly dispute the scope and meaning of the claimed "touch operation."  GREE argues without support that the claimed touch operation is effectively any operation a user may have with a touch screen. *See* Op. Br. at 6 (the term "simply refer[s] to an action in which a user interacts with the screen through touch, such as by touching, pressing on, sliding, or even removing a finger from the screen").  In contrast, Supercell's proposed construction of "operation that brings the user's finger or other object, such as a stylus, into contact with touch panel" is consistent with the commonly understood meaning of a touch operation, as well as the intrinsic record.  The Court should construe this phrase consistent with the plain and ordinary meaning, and adopt Supercell's construction.

Both the intrinsic record and extrinsic evidence support that Supercell's construction reflects the plain and ordinary meaning.  The patent defines the "touch operation" as a "***touch*** on screen." *See* '302 patent at 4:15-18 (referencing Figure 2, S101).  The plain meaning of "touch" refers to bringing a user's finger or other object into contact with something, here, a touch panel. *See* Kaempf Decl., Ex. F (Webster's New College Dictionary (3rd Ed. 2008)) at 1192 (defining "touch" as "[t]o cause or permit a bodily part, esp. the hand or fingers, to come into contact with

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

so as to feel."), Ex. G (The American Heritage Dictionary (5th Ed. 2012)) at 859 (same). █

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

     Moreover, the intrinsic and extrinsic evidence specifically contradict GREE's proposal
that the "touch operation" can encompass any actions on a touch screen, including sliding a
finger and removing a finger from the screen.  For example, whereas GREE argues that the
"touch operation" can include a "slide operation," the claims and specification specifically
distinguish these two operations.  *Compare, e.g.*, '302 patent at claim 1 (reciting "touch
operation") and *id.* at claim 2 (reciting "slide operation"); *compare also id.* at 4:19-37
(describing "touch operation" that causes display of shooting button circle SC) and *id.* at 4:47-52
(describing "slide operation" that causes movement of the shooting position).  The distinct
recitals of "touch operation" and "slide operation" give "rise to an inference that those different
terms have different meanings."  *See, e.g., Sol IP, LLC v. AT&T Mobility LLC*, No.
218CV00526RWSRSP, 2019 WL 6879403, at *5 (E.D. Tex. Dec. 17, 2019) (citing *CAE
Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000)
("In the absence of any evidence to the contrary, we must presume that the use of these different
terms in the claims connotes different meanings.")); *see also Nystrom v. TREX Co.*, 424 F.3d
1136, 1143 (Fed. Cir. 2005) ("When different words or phrases are used in separate claims, a
difference in meaning is presumed." (citation omitted)).  GREE's attempt to construe "touch
operation" to include "slide operation," under the cover of plain and ordinary meaning, is

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

improper.  The Court should adopt Supercell's construction, which properly differentiates the two terms, and excludes "slide operation" from the meaning of "touch operation."

While GREE points to language in the specification disclosing that "the CPU 11 accepts a subsequent ***slide operation of moving the touch operation*** while the touch state on the touch panel unit 18 is being kept" (*see* Op. Br. at 7), this language emphasizes the distinction between the two types of operations, which again supports Supercell's proposal.  "Slide operation" is not the equivalent of a touch operation, but rather the equivalent of the "***moving*** the touch operation."  Indeed, if the patentee intended to include sliding within the meaning of "touch operation," then the specification would have instead referenced a "touch operation consisting of a slide."

Further, the evidence supports that "touch operation" does not, as GREE argues, encompass the release or removing of a finger from the screen.  As an initial matter, GREE itself appears to concede that its argument stretches the claim language.  *See* Op. at 6 (contending that touch operation refers to any touch action, "***even*** removing a finger from the screen.").  Further, in its discovery requests, GREE has distinguished between the [first] "touch operation" used to display a frame indicative of a shooting effective range, and a "touch-***off*** operation" used to "trigger an attack."  Kaempf Decl., Ex. H (GREE's Amended Notice Deposition 30(b)(6)) at 10.

Further, the intrinsic and extrinsic evidence support that the plain meaning of touch operation does not cover the release or removal of a user's finger or other object from the touch panel.  The specification explains that the touch operation is "an ***input*** from the touch panel unit," and also describes that the touch panel device "accept[s]" touch operations.  *See, e.g.*, '302 patent at 5:29-31 ("input from the touch panel unit"), 5:35-37 (same) 6:4-6 (same); *see also id.* at Abstract "accepting a touch operation on the touch panel"), 2:14-31 ("Summary of the

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Invention" section describing "accepting a touch operation on the touch panel module," "accepting an instruction for an attack on an attack target," "determining whether the attack target in a game image displayed on the display is within the first frame or not, at a time point when the operation for the attack has been accepted").  Such consistent and repeated use of the "acceptance" and "input" language reflects that "touch operation" does not encompass removal of the user's finger from the screen, as these actions are not touch operations that could be "accepted" or received as "input" by a touch panel.  *See GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1371 (Fed. Cir. 2016); *see also Techtronic Indus. Co. v. Int'l Trade Comm'n*, 944 F.3d 901, 907–08 (Fed. Cir. 2019) ("It is axiomatic that, where the specification 'describes 'the present invention' as having [a] feature,' that representation may disavow contrary embodiments." (citing *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016))).

Finally, GREE's construction is improper as reads out "touch" from "touch operation," and effectively broadens the claim scope to include ***any*** operation whatsoever that the user has with the contemplated interface.  More specifically, GREE argues that the claimed touch operation "simply refer[s] to an action in which a user interacts with the screen through touch." But the claims are specifically directed to a touch panel.  *See, e.g.*, '302 patent at claim 1 ("identify a first touch operation on the touch panel"; "identify a second touch operation at the touch panel"); *see also id.* at 1:16-22 (Background of the Invention describing that the "present invention relates to a shooting game control method . . . suited to a device including a touch-panel-type display screen").  Thus, for the alleged invention that is limited to use on a touch panel, ***any*** operation in which the "user interacts with the screen" would be effectively covered under GREE's proposal.  This would read out "touch" from "touch operation," which is improper.  *See Personalized Media Commc'ns, LLC v. TCL Corp.*, No. 2:17-CV-433-JRG, 2018

WL 3207436, at *10 (E.D. Tex. June 29, 2018) (J. Gilstrap) (construction that "would render some of the [] claim language redundant . . . . is disfavored") (citing A*pple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1237 (Fed. Cir. 2016) ("Ideally, claim constructions give meaning to all of a claim's terms.")).

The Court should reject GREE's attempt to avoid construction of this term, so that it can later argue an impermissibly broad scope under the guise of plain and ordinary meaning. Supercell respectfully requests that the Court resolve the parties' dispute, and adopt Supercell's construction.

C.   **"[cause/control] the display to display a frame indicative of a shooting effective range in accordance with a first touch operation on the touch panel" (claims 1, 8-11)**

| Supercell's Proposed Construction | GREE's Proposed Construction |
|---|---|
| "display the frame indicative of a shooting effective range in response to and at the position of the first touch operation" | Plain and Ordinary Meaning; No Construction Needed |

Here, the intrinsic record repeatedly and consistently describes that the "frame indicative of a shooting effective range" is displayed "in response to and at the position of the first touch operation." *See GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1371 (Fed. Cir. 2016). Indeed, the very excerpt from the "summary of the invention" section cited by GREE, supports that the frame should be displayed "in accordance **with a position** of the touch operation." *See* Op. Br. at 9 (citing '302 patent at 2:17-31); *see also Techtronic*, 944 F.3d at 907–08 ("It is axiomatic that, where the specification 'describes 'the present invention' as having [a] feature,' that representation may disavow contrary embodiments." (citing *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016))). The specification further discloses that the frame is displayed precisely at the "coordinates of the touch-operated position." *See* '302 patent at 4:19-

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

37; *see also id.* at 5:6-12 (displaying frame "at the touch-operated position"), 5:13-23 (frame

"disposed at the touch position").  Moreover, the prosecution history shows that GREE overcame

a prior art reference by arguing that the claim "only displays a frame upon a first touch

detection," and does not, unlike the prior art reference at issue, "always display[] the mark (cross

hairs)."  Kaempf Decl., Ex. I ('302 patent file history: Response dated June 13, 2018 to Office

Action dated April 6, 2018) at 9.  Supercell's construction therefore reflects the meaning this

term would have to a person of ordinary skill in the art after reviewing the intrinsic record.  It is

also consistent with the named inventor's understanding of his purported invention.  ████████

████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████

**D.**   **"identify a second touch operation at the touch panel as an instruction for an attack when the frame is displayed" (claims 1, 8-11)**

| Supercell's Proposed Construction | GREE's Proposed Construction |
|---|---|
| "when the frame is displayed, identify a touch operation that is separate from the first touch operation, as an instruction for an attack" | Plain and Ordinary Meaning; No Construction Needed |

As GREE acknowledges, "the purpose of claim construction is to resolve disputed

meanings and technical scope."  *See* Op. Br. a t 10 (citing *U.S. Surgical Corp. v. Ethicon, Inc.*,

103 F.3d 1554, 1568 (Fed. Cir. 1997)).  Here, the parties dispute whether the "second touch

operation" must be entirely separate from the first touch operation, or whether it could be a part

of the first touch operation.  While GREE states it "does not dispute that the first and second

touch operations are different," it nonetheless suggests that the two types of operations may

overlap.  Specifically, it argues that a first touch operation can be any action in which a user

interacts with a screen through touch, including tapping the touch screen, but then also appears to

12

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

argue that the second touch operation can be the release or removing of the finger—i.e., the latter part of the "tap" operation. *See* Op. Br. at 6-8. Such a reading by GREE is contrary to the plain and ordinary meaning of the claim language, which requires two separate touch operations.

Moreover, Supercell's proposed construction, requiring two separate touch operations, is the only meaning supported by the specification. For example, Figure 2 of the patent describes separate touches—the first touch for causing the frame to be displayed as S101, and the second touch for executing the attack as S105. '302 patent at Fig. 2; *see also id.* at 4:10-37. In contrast, there is nothing in the specification that supports GREE's proposal that a second touch operation could be one and the same as, or a part of, the first touch operation. The Court should accordingly reject GREE's non-construction, and its attempt preserve the ability to later argue an impermissibly broad scope of the claims.

### E.   "second touch operation in the frame" (claims 3, 13)

| Supercell's Proposed Construction | GREE's Proposed Construction |
|---|---|
| "a touch operation that is separate from the first touch operation, in which the user's finger is brought into contact with the touch panel at a location inside a boundary of the displayed frame"<br><br>[incorporate construction for "touch operation"] | Plain and Ordinary Meaning; No Construction Needed |

The "second touch operation in the frame" should be construed according to its plain and ordinary meaning—that is, that the second touch (i.e., the user's finger or other object being brought into contact with the touch panel) must be "at a location inside a boundary of the displayed frame." In other words, the "in the frame" language should be interpreted as "at a location inside a boundary of the displayed frame."

13

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Supercell's construction is consistent with the commonly-understood meaning of the claim phrase, and is further supported by the specification.  Claims 3 and 13 recite that the "second touch operation in the frame" is "an instruction for an attack."  *See, e.g.*, '302 patent at claim 3.  The specification discloses that the instruction for an attack is necessarily the touch in the "inner part of the shooting button circle" (or "inside of the shooting button circle SC"), and it further distinguishes such inner touches (which execute attack) from touches on the outer part of the shooting button circle (which direct movement of the shooting circle).  *See id.* at 4:47-52, 6:65-7:2; *see also id.* at 4:53-57 (discussing "whether a touch operation has been executed in the shooting button circle SC"), Figure 2 (S105 reciting "Touch in circle?").

For purposes of claim construction, GREE does not appear to dispute that "in the frame" means "at a location inside a boundary of the displayed frame."  *See* Op. Br. at 9-10.  However, it is clear that GREE is attempting to avoid construction in order to later, improperly, argue that "in the frame" does not require a touch operation at a position within the boundary of the frame.  An implicit dispute therefore exists, and the Court should resolve that dispute, in favor of Supercell's construction that is consistent with both the commonly-understood meaning and the specification.  *O2 Micro Int'l*, 521 F.3d at 1360 ("The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'  When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute." (citations omitted)).

//

//

14

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

F.      "first frame" (claim 2)

| Supercell's Proposed Construction | GREE's Proposed Construction |
|---|---|
| Indefinite. | "the frame" |

While a court may correct obvious errors in a claim, it may only correct the error if: "'(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims.'"  *Sol IP, LLC v. AT&T Mobility LLC*, No. 218CV00526RWSRSP, 2020 WL 60141, at \*10 (E.D. Tex. Jan. 6, 2020) (citing *Novo Indus. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003)).  These prerequisites are not satisfied here.

GREE argues that the recitation of "first frame" should be corrected to "the frame" because a person of skill would understand the claims to "recite[] only a single frame."  But GREE itself has brought into question whether there is only a single frame at issue.  Indeed, in its argument regarding the "shooting effective range" term, GREE points to the "target circle" in Figure 4 as being the frame indicative of a shooting effective range.  *See* Op. Br. at 5.  But, with respect to the related patent '873 patent, GREE asserts that in the context of the same Figure 4, it is "the *shooting button circle* [that] show[s] a *shooting effective range* on the display."  *GREE, Inc. v. Supercell Oy*, Case No. 2:19-cv-00070, Dkt. No. 115 (Op. Claim Construction Br.) at 25.  In other words, GREE's own representations show that there the specification contemplates multiple frames and whether the "first frame" in claim 2 refers to the shooting circle SC or the target circle TC is subject to reasonable debate.  *Sol IP*, 2020 WL 60141, at \*10.  "First frame" thus should not be corrected, and because it lacks antecedent basis, the claim is invalid as indefinite.  *Id.* at \*10-12. Moreover, contrary to GREE's arguments, expert testimony is not needed to determine whether a claim is indefinite for lack of antecedent basis.  *See, e.g.*, *Summit 6 LLC v. HTC Corp.*, No. 7:14-

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

CV-00014-O, 2015 WL 11117868, at *19 (N.D. Tex. Mar. 21, 2015) ("the lack of expert

testimony presented by one party is not necessarily dispositive of the issue before the Court."

(citing *Smartflash LLC v. Apple Inc.*, 77 F. Supp. 3d 535, 560 (E.D. Tex. 2014)).

G.      **"a slide operation" (claims 2, 12)**

| Supercell's Proposed Construction | GREE's Proposed Construction |
|---|---|
| "operation following a touch operation in which the user moves the location of the user's finger from the touch operation position while maintaining contact with the touch panel" <br><br> [incorporate construction for "touch operation"] | Plain and Ordinary Meaning; No Construction Needed |

Supercell's proposed construction is consistent with the plain and ordinary meaning of

the claim phrase, and the Court should construe the term accordingly.  The specification supports

that the slide operation consists of "moving the touch operation while the touch state on the

touch panel unit is being kept."  '302 patent at 5:50-51 Supercell's construction is also consistent

with the commonly understood meaning of an operation of a slide.  *See* Kaempf Decl., at Ex. J

(The American Heritage College Dictionary, 4th Ed.) at 1303 (defining "slide" as "[t]o move

over a surface while maintaining smooth continuous contact.").

GREE's argument that construing a slide operation to activity that takes place after a

touch operation is "without support" is incorrect.  More specifically, GREE points to the

disclosure at col. 5:47-51 as the only basis of its argument; that excerpt recites:

> In the case where the outer edge of the shooting button circle SC has been touch-operated, if this operation is determined in step S108, the CPU 11 accepts a subsequent ***slide operation of moving the touch operation while the touch state on the touch panel*** unit 18 is being kept. Based on the accepted content, the CPU 11 moves the display position of the shooting button circle SC and target circle TC (step S110).

16

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

As an initial matter, GREE does not dispute that this language supports at least the latter part of Supercell's construction, regarding "maintaining contact with the touch panel."  Moreover, GREE argues that based on this disclosure, a slide operation is a type of touch operation.  To the contrary, however, this language supports that slide operations and touch operations are entirely different; if anything; "*moving* [a] touch operation" is what is equivalent to a slide operation.  In sum, the specification supports that a touch operation is entirely separate from a slide operation, and a touch operation (i.e., bringing the user's finger or other object into contact with the touch panel) must precede the movement of that touch operation, consistent with Supercell's proposal.

## V.   CONCLUSION

For the foregoing reasons, Supercell respectfully requests that its proposed constructions be adopted by the Court.

Dated:    March 10, 2020                       Respectfully submitted,


        */s/ Michael J. Sacksteder*
Geoffrey R. Miller
(Texas State Bar No. 24094847)
FENWICK & WEST LLP
902 Broadway, Suite 14
New York, NY 10010
Telephone:     212.430.2600
Email:            gmiller@fenwick.com

Michael J. Sacksteder (Admitted E.D. Texas)
Bryan A. Kohm (Admitted E.D. Texas)
Christopher L. Larson (Admitted E.D. Texas)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, California 94104
Telephone:     415.875.2300
Facsimile:      415.281.1350
Email:            msacksteder@fenwick.com
                bkohm@fenwick.com
                clarson@fenwick.com

17

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Jeffrey A. Ware (Admitted E.D. Texas)
Jessica M. Kaempf (Admitted E.D. Texas)
FENWICK & WEST LLP
1191 Second Ave., 10th Floor
Seattle, Washington 98101
Telephone:     206.389.4510
Facsimile:      206.389.4511
Email:          jware@fenwick.com
                      jkaempf@fenwick.com

Jennifer R. Bush (Admitted E.D. Texas)
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone:     650.988.8500
Facsimile:      650.938.5200
Email:          jbush@fenwick.com

Deron R. Dacus
State Bar No.  00790553
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone:     903.705.1117
Facsimile:      903.581.2543
Email:          ddacus@dacusfirm.com

*Attorneys for Defendant Supercell Oy*

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2020, a true and correct copy of the foregoing

document, including declarations and exhibits attached hereto, was served on GREE, Inc.

through their counsel of record via email at GREE-Supercell@kilpatricktownsend.com,

melissa@gillamsmithlaw.com, and gil@gillamsmithlaw.com.

*/s/ Jessica M. Kaempf*
Jessica M. Kaempf

**CERTIFICATION OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is authorized to be filed under seal pursuant

to the Protective Order entered in this case.

*/s/ Jessica M. Kaempf*
Jessica M. Kaempf

19